UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARINA CONERLY, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>VERACITY RESEARCH, et al.,<br><br>          Defendants. | No. 2:19-cv-1021-KJM-KJN<br><br>FINDINGS AND RECOMMENDATIONS ON PLAINTIFFS' MOTION FOR DEFAULT<br><br>(ECF No. 28) |

      Plaintiffs Carina Conerly, M.T., James Conerly, and Marilyn Tillman-Conerly, proceeding pro se, assert claims against defendants Veracity Research Company and one of its employees, Kristy Torain. (ECF No. 12.) Presently pending before the court is plaintiffs' motion for default judgment against defendant Veracity Research.[1] (ECF No. 28.)

      The undersigned recommends the motion for default judgment be DENIED. Further, upon reviewing the operative complaint, pursuant to the court's independent duty to assess federal subject matter jurisdiction, the undersigned recommends certain portions of plaintiffs' second amended complaint be DISMISSED for lack of subject matter jurisdiction.

///

///

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) and (21) for the entry of findings and recommendations. See 28 U.S.C. § 636(b)(1)(B).

1

**BACKGROUND**

On June 4, 2019, plaintiffs Carina Conerly and M.T. filed a complaint against defendants Veracity Research Company and Kristy Torain, asserting various claims under California state law. (ECF No. 1.) The undersigned recommended dismissal for lack of subject matter jurisdiction, as the complaint alleged that plaintiffs and defendants were all residents of California and no federal claims existed. (ECF No. 4.) Carina[2] objected, noting that she intended to allege defendants were citizens of Texas. (ECF No. 5.) Around this time, the court became aware of a similar case filed by James Conerly and Marilyn Tillman-Conerly, and ordered that case consolidated with Carina's case.[3] (ECF No. 6.) The undersigned withdrew its findings and recommendations, noted James and Marilyn had paid the $400 filing fee, and ordered plaintiffs to file an amended complaint adequately addressing the defects in diversity jurisdiction. (Id.) Plaintiffs filed a first amended complaint, but this filing merely provided a bullet-point list of claims. (ECF No. 7.) Because it appeared plaintiffs misconstrued the court's instructions regarding the need for a complaint to stand on its own without reference to prior filings, the court clarified its order to amend. (ECF No. 8.) In October 2019, plaintiffs moved for an entry of default on the amended complaint, but the Clerk of Court denied this request because of the court's order for plaintiffs to amend. (ECF Nos. 10, 11.)

On October 18, 2019, the now-operative second amended complaint ("2AC") was filed, alleging defendants were citizens of Texas. (ECF No. 12.) The 2AC alleged that as part of an investigation of Carina's Worker's Compensation claim, CalSTRS (her employer) hired

---

[2] Due to the familial relations, the court will use plaintiffs' first names. No disrespect is intended.

[3] Cf., e.g., Jackson v. Berkey, 2020 WL 1974247, *2 fn.2 (W.D. Wash. April 24, 2020) (noting that motions to consolidate are considered non-dispositive and within the pre-trial authority of the magistrate judge to resolve); Beco Dairy Automation, Inc. v. Global Tech Systems, Inc., 2014 WL 12572955, *1 (E.D. Cal. Dec. 9, 2014) (magistrate judge granting plaintiff's "non-dispositive" motion to consolidate); with United States ex rel. Rogers v. County of Sacramento, 2005 WL 8176671, *1 (E.D. Cal Dec 20, 2005) (issuing findings and recommendations on motion to consolidate—out of an abundance of caution—as consolidation issue was "unsettled" for purposes of 28 U.S.C. § 636(b)(1)) (comparing United States v. $8,221,877.16, 330 F.3d 141, 145 (3d Cir. 2003) (noting magistrate judge consolidation order without disapproval); with Giovanni v. Lynn, 48 F.3d 908, 911 n.4 (5th Cir. 1995) (consolidation recommended)).

defendants Torain and Veracity. (Id. at 6.) Between May and June of 2019, Carina allegedly received two phone calls from Torain in connection with the investigation. (Id.) Torain also allegedly drove her vehicle recklessly in front of Carina and M.T., and allegedly damaged Carina's home security cameras "by the use of some sort of laser and light that is projected into the lens[.]" (Id. at 7.) The 2AC asserts claims for Intentional Infliction of Distress ("IIED"), Invasion of Privacy, Personal Property Damage, Child Endangerment, Harassment, and Retaliation. (Id.) The 2AC prays for $1,000,000 in compensatory damages, punitive damages, and injunctive relief. (Id.) Though the first portion of the complaint alleges claims on behalf of Carina, it also asserts these claims on behalf of Carina's child M.T. (Id.) Additionally, the second half of the 2AC asserts the exact same claims from James and Marilyn's point of view—all on behalf of their daughter Carina. (Id. at 8-15.)

      Appended to the 2AC were two documents entitled "proof of service," which indicate that an individual mailed two copies of the 2AC to Torain and Veracity at an address on Dallas Drive in Denton, TX. (Id. at 16-17.) On November 14, 2019, plaintiffs requested an entry of default against Torain and Veracity, but the Clerk declined due to a failure to demonstrate proper service. (ECF Nos. 13, 14.) The Clerk issued a summons for the 2AC and served this on plaintiffs. (ECF No. 15.) On November 19, plaintiffs again requested an entry of default, which the Clerk again declined to enter for lack of service. (ECF Nos. 16, 17.) On December 10, plaintiffs filed a notice that the summons had been executed. (ECF No. 18.) On December 26, plaintiffs again requested an entry of default, which the clerk again declined because "the summons do not specifically indicate that Defendants Kristy Torain and Veracity Research Company were properly served." (ECF Nos. 19, 20.) On February 24, 2020, plaintiffs filed a notice that the summons had returned executed as to Veracity, but that Torain had not been served. (ECF Nos. 22, 25.) The execution of summons indicated a Denton County deputy delivered the summons to a Ms. Krista Koons at the same Dallas Drive address. (Id. at 2.) On June 22, 2020, plaintiffs again requested default be entered against Torain and Veracity. (ECF No. 24.) The Clerk entered default against Veracity only. (ECF Nos. 26, 27.) Plaintiffs now move for default judgment against Veracity Research Company. (ECF No. 28.)

**DISCUSSION**

**I.    Claims by James, Marilyn, and M.T. should be dismissed for lack of standing.**

Before the court considers plaintiffs' motion for default judgment, there are issues with the court's subject matter jurisdiction over certain claims stated in the 2AC. As a federal court's power to speak on matters takes precedence over a party's motion for default, the undersigned addresses these issues first.

Legal Standard

Federal courts have an independent duty to assess whether federal subject matter jurisdiction exists, whether or not the parties raise the issue. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004). The court must sua sponte dismiss claims if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A federal district court generally has original jurisdiction over a civil action when: (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). Further, for a court to retain subject matter jurisdiction over a claim, a plaintiff must demonstrate Article III standing. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In order to satisfy this "irreducible constitutional minimum" of standing a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Analysis

James and Marilyn's claims appear completely based on Carina's experiences, as the facts they assert are merely a restatement of Carina's complaint with the phrase "our daughter" inserted throughout. (See ECF No. 12 at 8-15.) As the court noted in its consolidation order, James and

4

Carina were ordered to amend any claim of their own against defendants, but were informed that they could not state a claim on Carina's behalf. See Pony v. Cty. of Los Angeles, 433 F.3d 1138, 1146 (9th Cir. 2006) ("Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party.") (citing Allen v. Wright, 468 U.S. 737, 751 (1984) ("Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . .")). Because James and Marilyn's claims are based solely on Carina's experiences, James and Marilyn have no standing to sue on these claims, and so the court has no subject matter jurisdiction. Thus, all claims by James and Marilyn should be dismissed.

Further, it appears from the 2AC that Carina is attempting to assert claims on behalf of her child, M.T., who is a minor. "A parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997). Thus, any claim purportedly stated by Carina on behalf of M.T. should be dismissed for lack of Article III standing. See Id. at 876 (treating a non-attorney's attempt to represent a minor as an issue of standing).

## II. Carina Conerly's Motion for Default against Veracity Research should be denied.

Having disposed of the claims lacking in subject matter jurisdiction, the court turns to the potentially viable claims asserted by plaintiff Carina Conerly in the 2AC - and her motion for default judgment against Veracity Research Company on those claims.

Legal Standard

Under Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). Before a default is entered, the "court clerk must be satisfied from [plaintiff's] request and accompanying documentation that (1) defendant has been served with the summons (or has agreed to waive service); (2) the time allowed by law for responding has expired; (3) defendant has failed to file a pleading or motion permitted by law; and (4) defendant is neither a minor nor an incompetent person." Shapour v. California, Dep't of Transp., 2013 WL 6797470, at *1 (E.D. Cal. Dec. 19, 2013).

5

After default has been entered, default judgment may be requested against the party in default. See Fed. R. Civ. P. 55(b). However, an entry of default "does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).

Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999); see also Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir.1992) ("Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process."). As part of the personal jurisdiction inquiry, a court must ensure that all defendants have been adequately served in conformance with Rule 4 of the Federal Rules of Civil Procedure. See Securities & Exchange Comm'n v. Ross, 504 F.3d 1130, 1140 (9th Cir. 2007) ("[N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.") (citations omitted); see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons.").

If no jurisdiction or service issues exist, the court then considers the following factors:

1. the possibility of prejudice to the plaintiff;
2. the merits of plaintiff's substantive claim and the sufficiency of the complaint;
3. the sum of money at stake in the action;
4. the possibility of a dispute concerning material facts;
5. whether the default was due to excusable neglect; and
6. the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72. Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). However, although well-pleaded allegations

in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992); DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").

Analysis

### A.  Subject Matter Jurisdiction

The face of Carina's complaint indicates the court has subject matter jurisdiction over her multiple California state law claims. Federal courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States . . . ." 28 U.S.C. § 1332. In the 2AC, Carina asserts that she is a citizen of California, and Veracity is a citizen of Texas because it is a Texas corporation with its principal place of business in Texas. (ECF No. 12 at 3.)

### B.  Personal Jurisdiction and Service of Process

Because no federal statute governs personal jurisdiction, the Court "applies the law of the state in which the court sits." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir.2011). California's long-arm statute provides that jurisdiction may be exercised over nonresident defendants "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991) ("Since California's jurisdictional statute is coextensive with federal due process requirements, the jurisdictional inquiries under state law and federal due process merge into one analysis."). The due process clause prohibits the exercise of jurisdiction over nonresident defendants unless those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Id. (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction over non-residents can arise under either general or specific jurisdiction. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223, 1227 (9th Cir. 2011).

"For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts." Id. at 1223. For specific jurisdiction, the court applies a three-part test: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The "purposeful direction" test requires a look at "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015). Defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) that caused harm that they knew was likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 802. "[M]ere injury to a forum resident is not a sufficient connection to the forum." Walden v. Fiore, 571 U.S. 277, 290 (2014). Instead, the court is to engage in a "forum-focused" inquiry. Id.

Here, the 2AC does not indicate the existence of general personal jurisdiction, but does provide enough facts for the court to conclude the specific personal jurisdiction tests are satisfied. Carina contends that, as part of her employer's investigation of her workers compensation claim, CalSTRS hired Veracity to interview Carina. (See ECF No. 12.) Veracity's agents contacted Carina by phone and in person, and these actions gave rise to the claims asserted in Carina's complaint. Taking these facts as true for purposes of the personal-jurisdiction inquiry, the court finds Veracity's agreement with CalSTRS and its investigation of Carina sufficiently demonstrate Veracity committed intentional acts aimed at California, and Carina's claims are related to these activities. Schwarzenegger, 374 F.3d at 802. Thus, the court finds the personal jurisdiction inquiry satisfied for purposes of Carina's motion for default judgment.

Further, as part of the personal jurisdiction inquiry, the court must review whether defendants have been served under Federal Rule of Civil Procedure 4. See Ross, 504 F.3d at 1140. On June 22, 2020, Carina requested a default be entered against Veracity. (ECF No. 24.) Therein, she noted the summons and complaint had been served on a Ms. Krista Koons by a Denton County deputy constable at an address on Dallas Drive on February 14, 2020. (Id.) The

Clerk of the Court entered default, which appears appropriate on the face of the documents submitted. Based on the court's review of the California Secretary of State's website, an entity named Veracity Research Co., LLC appears to maintain its business at the Dallas Drive address in Denton, Tx. Under Rule 4, service on an entity may be had by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located . . . ." See Fed. R. Civ. P. 4(e)(1) and (h)(1). California state law allows for service upon a corporation by delivering a copy of the summons and complaint to, among others, "a person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10. In this way, Carina's service of the summons and complaint to Ms. Koons at the Dallas Drive address by the Denton County Deputy Constable appears valid.[4]

### C. Default Judgment under the Eitel Factors

The undersigned finds that the weight of the Eitel factors counsels against an entry of default judgment against Veracity on Carina's claims.

#### 1. Carina may be prejudiced by Veracity's continued non-responsiveness.

The first Eitel factor considers whether Carina would suffer prejudice if default judgment is not entered, as prejudice to a plaintiff weighs in favor of a default judgment. See PepsiCo, 238 F. Supp. 2d at 1177. Here, because Veracity has failed to answer or otherwise respond to the allegations in Carina's complaint (see ECF No. 12), Carina would be left without any other recourse against Veracity should this action extend indefinitely. Accordingly, the first Eitel factors favors the entry of default judgment. However, the remaining factors counsel against default judgment at this time.

#### 2. The court is skeptical of Carina's claims as stated in the 2AC.

The second and third factors (the merits of the substantive claims and the sufficiency of the complaint) are considered in tandem, due to the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); PepsiCo, 238 F.

---

[4] The Clerk's entry and court's review of this issue does not later preclude Veracity from challenging these findings, should Veracity eventually enter an appearance and choose to defend.

1   Supp. 2d at 1175.  However, "a default judgment may not be entered on a legally insufficient

2   claim."  Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004).

3          In Carina's 2AC, she lists the following claims: (a) Intentional Infliction of Emotional

4   Distress; (b) Invasion of Privacy; (c) Personal Property Damages; (d) Reckless Endangerment;

5   (e) Retaliation; (f) Harassment; and (g) Child Endangerment.  (See ECF No. 12 at 8.)  Carina

6   offers the following in support of her claims against Veracity (summarized, for brevity):

- In April of 2019, Carina received a treatment plan from a licensed social worker, and received a treatment plan for depression and anxiety.  In connection, she spoke with agents for her employer, CalSTRS, submitted paperwork to CalSTRS, and communicated with health professionals.  (ECF No. 12 at 3-5.)

- On May 9, 2019, Carina received a voice message from one of Veracity's investigators, Kristy Torain. Kristy told Carina she was investigating the workers compensation claim, but Carina would not speak with her.  That same day, an employee of CalSTRS confirmed Veracity had been hired by CalSTRS.  (Id.)

- On May 17, 2019, Carina received another voice message from Torain regarding the work-comp claim.  (Id. at 5.)

- At some point around this time, Carina saw Torain "stopping on brakes to cause a collision," "cutting in front of the vehicle that [Carina] was riding in," and "following too close to the rear of [this] vehicle." (Id. at 5-7.)[5]

- At some point, Torain allegedly damaged Carina's home security system "by the use of some sort of laser and light that is projected into the lens of my camera."  (Id. at 7.)

Considering the actions allegedly taken by Veracity's agent against Carina, the undersigned finds the complaint to be wholly insufficient, and the merits of Carina's claims to be questionable.

       Regarding the home security system, it is true that a claim may be stated for damages to personal property under a theory of "trespass to personal property."  See Zaslow v. Kroenert, 29 Cal.2d 541, 551 (1946).  However, Carina's sole fact describing the incident borders on the frivolous.  See, e.g., Godfrey v. Sacramento Cty. Sheriff's Dep't, 2019 WL 3767395, at *3 (E.D.

---

[5] Carina also makes other allegations in the 2AC, but the court has disregarded them as conclusory in nature. (See, e.g., ECF No. 12 at 7, alleging Veracity's acts "are causing Child Endangerment by driving cars in a reckless manner[.]"). DIRECTV, 503 F.3d at 854 (stating that for default judgments, a defendant does not admit statements that are conclusions of law).

10

Cal. Aug. 9, 2019), report and recommendation adopted, 2019 WL 4879154 (E.D. Cal. Oct. 3, 2019) (finding allegations that defendants used x-ray flashlight to disrupt plaintiff's home to be "so insubstantial . . . as not to involve a federal controversy within the jurisdiction of the District Court . . . .") (quoting Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir. 1985)).

As to the remainder of plaintiff's claims, each is pinned to Torain's investigation of Carina's workers-compensation claim. Carina describes two voice messages left by Torain, which appear to be cordial in nature. In fact, Carina's dispute does not appear to concern the tenor of these calls, but Veracity's authority to investigate her claims. Thus, Veracity's conduct does not appear to have "crossed the line . . . to outrageous conduct outside the bounds of what is normally accepted in society. Barefield v. HSBC Holdings PLC, 2018 WL 5784707, at *12 (E.D. Cal. Nov. 1, 2018) (noting creditor's multiple phone calls in connection with collection of a debt lacked allegations of severity for claim of intentional infliction of emotional distress) (citing Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc., 129 Cal. App. 4th 1228, 1259 (2005) (IIED requires, among other things, "extreme and outrageous conduct by the defendant."); see also Montegna v. Yodle, Inc., 2012 WL 3069969 at *3 (S.D. Cal. July 27, 2012) (noting that an invasion of privacy claim under California common law requires an invasion "highly offensive to a reasonable person," which examines "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded.") (quoting Miller v. Nat'l Broad. Co., 187 Cal. App. 3d 1463, 1483–84 (Cal. Ct. App. 1986)). Finally, Carina's statement about Torain's operation of her vehicle leads the court to conclude that, in the right context, an investigator who intentionally attempts to cause a collision could be part of an IIED claim. (See ECF No. 12 at 7.) However, as noted above, Carina's claims are highly contextual, and the 2AC's statement regarding the incident lists "examples." Such allegations, made in broad strokes and missing key facts, weigh against an entry of default. Danning, 572 F.2d at 1388; see also, e.g., High Tech Pet Products, Inc. v. Juxin Pet Product Co., Ltd., 2013 WL 1281619, at *5 (E.D. Cal. Mar.27, 2013) ("After Twombly and Iqbal, a complaint that raises only conceivable claims, rather than plausible ones, cannot support a default

judgment.").

### 3. The sum of money prayed for appears disproportionate to the harm.

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). If the amount of money is large or disproportionate, this factor weighs against default judgment. See Olive v. Robinson, 2019 WL 4748390, at *4 (W.D. Wash. Sept. 30, 2019).

Here, Carina seeks $1,000,000 in compensatory damages, plus punitive damages, for harm suffered from two cordial voice messages, a camera that had a light pointed at it, and a potentially-reckless traffic incident (that apparently did not result in an accident). This amount is disproportionate to the harm allegedly suffered, and weighs against the entry of default judgment. See, e.g., Brantley v. Boyd, 2013 WL 3766911, at *8 (N.D. Cal. July 16, 2013) (noting district courts often "compare the damages sought in default judgment to jury awards in similar case" to determine emotional distress damages, and citing cases where a plaintiff received $25,000 to $100,000 for *abusive* debt collection for an IIED claim).

### 4. Some material facts may be in dispute.

The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default when considering whether any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Where a plaintiff "has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment." Landstar Ranger, Inc. v. Parth Enter., Inc., 725 F.Supp.2d 916, 921 (N.D. Cal. 2010). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992); DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or

1 conclusions of law).

2     Given the context detailed in the court's summation of the facts, there lies a distinct possibility that certain material facts will be in dispute. The court does not doubt that CalSTRS hired Veracity to investigate Carina's workers-compensation claim, nor does it doubt Carina disagrees with her employer regarding this investigation. However, the tenor of the conversations and messages is likely to be in dispute, as are the facts concerning the vehicle incidents. Further, whether any property damage occurred by "light from a laser" is likely to be disputed. See, e.g., Elf-Man, LLC v. Albright, 2014 WL 4384028, at *2 (E.D. Wash. Sept. 3, 2014) (noting that "questions remain" about the nature of an investigation into the defendants' acts, and that "there remains a possibility that material facts are disputed," default judgment was inappropriate).

        5.   <u>The possibility of excusable neglect exists.</u>

    Default is counseled against where a defendant's failure to respond is due to excusable neglect. See Pepsi Co, 238 F. Supp. 2d at 1177. As noted in the personal jurisdiction section above, it appears on first glance that service of process has been had on Veracity. Carina requested that a deputy constable in Denton, Tx deliver the complaint and summons to the address listed as Veracity's in the California Secretary of State's website. However, the court does not know the identity of Ms. Koons, who accepted the documents from the deputy constable, and so cannot say whether Veracity's failure to respond was due to excusable neglect. See, e.g., PNC Bank, N.A. v. Smith, 2011 WL 6696947, at *4 (E.D. Cal. Dec. 21, 2011) (finding the possibility of excusable neglect because of service issues). Further, the court notes the existence of Veracity's registered agent, a "Capitol Corporate Services, Inc.", which is located in Sacramento, Ca. (See Cal. Secretary of State "Business Search" website, at https://businesssearch.sos.ca.gov/, accessed Aug 19, 2020).

        6.   <u>The policy favoring disposition on the merits supports denying default judgment.</u>

    "Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, 238 F. Supp. 2d at 1177; see also

13

Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

Here, this factor supports denying Carina's motion for default judgment. Because the only factor that weighs in Carina's favor is the likely prejudice, the policy adds to the weight against entry of a default judgment. See, e.g., Collin v. Zeff, 2013 WL 3273413, at *7 (C.D. Cal. June 24, 2013) (finding that policy, alongside the substantive merits, sufficiency of the complaint, and the money at stake, weighed against default judgment).

### D. Conclusion regarding Carina's Default Judgment Motion

Given the above analysis, and the significant questions the court has regarding Carina's claims, the facts underlying those claims, and her service of process on Veracity, the undersigned recommends denial of Carina's motion for default judgment at this time. See Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant.").

### III.   Miscellaneous Recommendations

In the background section, the court indicated that near the beginning of Carina's case, the undersigned became aware of James and Marilyn's case, which asserted the exact same claims on behalf of their daughter. (See ECF No. 6.) Thus, the undersigned ordered these cases consolidated. (Id.) Further, since James and Marilyn had paid the $400 filing fee, the issue of Carina's IFP status and the court's screening of her complaint appeared moot. Given a review of the relevant case law, and out of an abundance of caution (see, e.g., United States ex rel. Rogers, 2005 WL 8176671 at *1), the court will submit these earlier issues regarding consolidation and IFP to the assigned district judge for review. (See ECF No. 6.)

### RECOMMENDATIONS

Accordingly, it is HEREBY RECOMMENDED that:

1. The district court approve consolidation of the following cases: 2:19-cv-1021-KJM-KJN and 2:19-cv-1113-TLN-EFB;

2. Plaintiff Carina Conerly's motion to proceed in forma pauperis be DENIED AS MOOT;

3. The claims brought by plaintiffs James Conerly, Marilyn Tillman-Conerly, and M.T. be DISMISSED for lack of subject matter jurisdiction; and

4. Plaintiff's Motion for Default Judgment (ECF No. 28) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: August 24, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

cone.1021

15